**BAYLOR HEALTH CARE
SYSTEM, Appellant,**

v.

**MAXTECH HOLDINGS, INC., Maxim
Technologies, Inc., and Maxim
Engineers, Inc., Appellees.**

No. 05–01–01195–CV.

Court of Appeals of Texas,
Dallas.

May 23, 2003.

Joann N. Wilkins, Burford & Ryburn, L.L.P., Dallas, for Appellant.

Bruce Marvin Flowers, Guida, Slavich, & Flores, Dallas, for Appellees.

Before Justices O'NEILL, FRANCIS and MALONEY.[1]

**OPINION**

Opinion By Justice FRANCES J. MALONEY (Retired).

We withdraw our opinion of April 9, 2002. This is now the opinion of the Court. We overrule appellants' motion for rehearing and affirm the trial court's judgment.

On June 11, 1999, Baylor Health Care System sued Maxtech Holdings, Inc., Maxim Technologies, Inc., and Maxim Engineers, Inc., (collectively, Maxim) alleging that Maxim negligently performed a pre-purchase environmental site assessment in 1991, which resulted in damages of over $1,000,000 in 1997. The trial court granted Maxim's motion for summary judgment on limitations. In three related issues, Baylor contends the trial court erred in granting Maxim's motion for summary judgment, holding that the discovery rule did not apply, and concluding that, as a matter of law, Baylor discovered, or should have discovered, its injury more than two years prior to filing suit. We affirm the trial court's judgment.

**BACKGROUND**

In 1991, Baylor hired Maxim to prepare an environmental assessment report on certain parcels of land that Baylor was considering buying. Maxim gave Baylor a preliminary summary report. Baylor purchased the parcels after receiving the summary report, but before Maxim delivered its final report (the 1991 Report) to Baylor. The 1991 Report stated that historical ownership records revealed no apparent environmental impacts "with the exception of Lots 8, 9, and 11 ..., which were occupied by Progress Laundry and Cleaning Company" (the dry cleaning site). Although Maxim recommended that Baylor further investigate "several locations," the 1991 report did not specifically recommend that Baylor further investigate the dry cleaning site.

---

1. The Honorable Frances J. Maloney, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

In September 1996, Baylor considered buying another parcel of land adjacent to the dry cleaning site. This parcel had once been the site of Dale's Used Car Lot and automotive repair shop (the used car lot). At Baylor's request, Maxim prepared an environmental assessment report of the used car lot. This report, dated September 6, 1996 (the 1996 Report), expressly stated that either the dry cleaning site or the used car lot "may pose an environmental concern to the [used car lot]." Maxim conducted a limited subsurface investigation of the car lot site and found each sampling showed tetrachloroethane (PERC)[2] had contaminated the car lot site. Maxim recommended that Baylor conduct additional testing of the car lot site to determine the extent of contaminated soils, followed by implementing a remedial program.

## DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT ON LIMITATIONS OR DID THE DISCOVERY RULE APPLY?

The parties do not dispute that the two-year statute of limitations applies to the negligence and negligent misrepresentation causes of action. Rather, they dispute whether the discovery rule applies. And, if it applies, when Baylor knew, or should have known, that something had contaminated the dry cleaning site. Baylor contends that this date was in July 1997 when it found the contaminated sump. Maxim responds that the operative date was, at the latest, 1996 when it delivered the 1996 Report.

### 1. Standard of Review

 The standard of review for summary judgment is well settled. *Nixon v.*

*Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982). Thus, the defendant must conclusively prove when the cause of action accrued and negate the discovery rule if pleaded or otherwise raised. *KPMG*, 988 S.W.2d at 748. If the movant establishes that limitations bars the action, the non-movant must then adduce summary judgment proof raising a fact issue to avoid limitations. *Id.*

### 2. Maxim's Summary Judgment Evidence

Maxim attached to its motion for summary judgment (1) Baylor's original petition showing that Baylor filed suit on June 11, 1999, (2) the 1996 Report, and (3) excerpts from the deposition testimony of William S. Carter, one of Baylor's corporate executives, and Darrell Pryor, Baylor's liaison with Maxim.

The 1996 Report expressly states that the dry cleaning company "may have performed dry cleaning services[,] and solvents utilized in this process may pose an environmental concern to [the used car lot]."[3] The 1996 Report recites that Maxim conducted a limited subsurface investigation at the used car lot "to determine if there has been an environmental impact to

---

**2.** Tetrachloroethane is also known as Perchloroethylene or PERC.

**3.** Because the 1996 Report defines the Subject Site as the used car lot, all our future references to the "used car lot" means the above-mentioned Subject Site.

[the used car lot] from these [dry cleaning] operations." Maxim expressed concern with the area "in which dark staining was observed during the site inspection and near the east boundary of [the used car lot] (due to Progress Laundry and Cleaning Company having previously been located adjacent to the east)."[4] Maxim reported that it found PERC in all four borings it analyzed from the east boundary of the used car lot. As a result, Maxim recommended that "[a]ddtional sampling and analysis is necessary to determine the vertical extent of soils impacted from TPC and/or VOCs (particularly tetrachloroethane)." Maxim also recommended that following "vertical *and horizontal* delineation, an appropriate remediation program should be decided upon and implemented." (Emphasis added.)

Carter testified in his deposition that he did not know if Baylor followed any of Maxim's 1996 recommendations to conduct more testing. Pryor testified in his deposition that he had not read the 1996 Report in its entirety. But, he contended that if Maxim had verbally given him the same information it had put in the 1996 Report, the possible environmental impact of the former dry cleaning operations would have raised a red flag in his mind.

### 3. Baylor's Summary Judgment Evidence

 In its motion for rehearing, Baylor chastises this Court for not including in our analysis certain of its responsive summary judgment evidence. However, Baylor does not direct this Court to the location in either of its appellate briefs where Baylor cited to or relied upon the complained of "unconsidered" evidence. Moreover, Baylor provides certain record references pages in its motion for rehear-

ing for the "unconsidered" evidence; however, it did not include those same record reference pages in either of its appellate briefs. On appeal, the appellant bears the burden of discussing its assertion of error and pointing the appellate court to the portions of the record that support a complaint. *See Jensen Const. Co. v. Dallas County,* 920 S.W.2d 761, 769 (Tex.App.-Dallas 1996, writ denied); *Most Worshipful Prince Hall Grand Lodge v. Jackson,* 732 S.W.2d 407, 412 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). An appellate court has no duty to search a voluminous record to determine whether an assertion on the validity of reversible error without appellant's guidance. *Anheuser–Busch Cos., Inc. v. Summit Coffee Co.,* 858 S.W.2d 928, 942 (Tex.App.-Dallas 1993, writ denied), *vacated on other grounds,* 514 U.S. 1001, 115 S.Ct. 1309, 131 L.Ed.2d 192 (1995); *See Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 283 (Tex.1994).

Instead, Baylor's appellate briefs directed this Court to attached deposition excerpts from Maxim's expert witness, R. David Shiels as its summary judgment proof. Shields reviewed the 1996 Report and testified as follows:

1. PERC was not identified as a solvent or chemical used in dry cleaning in the 1996 Report;

2. Maxim could not identify where the PERC found on Dale's Used Cars originated;

3. There was no recommendation in the 1996 Report to investigate whether PERC was coming from the dry cleaning site;

4. Detection of PERC at a used car operation is to be expected;

5. The 1996 Report does not state that Baylor purchased contaminated

---

**4.** Notwithstanding appellant's implying that this Court made impermissible inferences on

the "dark staining," our opinion merely quoted the 1996 Report.

property in 1991, exposing Baylor to substantial liability; and

6. Baylor could not have had actual knowledge of its 1991 injury by virtue of the 1996 Report.

### 4. Application of Facts to Law

■ Assuming, without deciding, the discovery rule applies, the 1996 report raised concerns over the environmental impact of the former dry cleaning services conducted adjacent to the used car lot. Although the report did not identify PERC as a solvent used in dry cleaning operations, Maxim recommended horizontal testing on the used car lot and expressly stated that dry cleaning services and solvents may have posed an environmental concern to the site. This alone should have put Baylor on notice that dangerous contaminants could exist and would need to be cleaned up from the dry cleaning site. Furthermore, both Carter's and Pryor's deposition testimony support Maxim's position. Maxim's summary judgment evidence established that Baylor knew, or should have known, of its injury from the 1996 Report. Because Maxim's summary judgment evidence proves that Baylor should have known of the existence of environmentally dangerous contaminants after receiving the 1996 report, we must look to Baylor's summary judgment proof to determine if it raised a fact issue in avoidance of the statute of limitations. *KPMG*, 988 S.W.2d at 748.

Baylor relies on the following testimony of Carter and Pryor to establish a fact issue on when it knew or should have known of the "injury in 1991." Carter was unaware if Baylor even followed Maxim's recommendations to conduct more testing. And Pryor admitted he had not read the entire report, so he did not know that PERC might have contaminated the used car lot. But, had Maxim "told" him about

PERC, it would have raised red flags for him. Neither Carter's nor Pryor's testimony raised a fact issue on whether Baylor knew, or should have known in 1996 that it was injured in 1991.

That Maxim could not identify where the PERC originated only supports its recommending that Baylor conduct further vertical and horizontal testing. Knowing that one could expect to find PERC at a used car lot does not eliminate neighboring sites from environmental concerns. The 1996 Report expressly recommended that horizontal testing be done on the used car lot, putting Baylor on notice that further testing of the adjacent dry cleaning site was required.

Even if the 1996 Report did not expressly state that Baylor purchased contaminated property in 1991, either report should have put Baylor on inquiry on the extent and possibility that the dry cleaning operations contaminated the dry cleaning site. Reasonable minds cannot differ whether the 1996 Report put Baylor on notice to further investigate the possible contamination of the dry cleaning site.

We conclude that Maxim proved as a matter of law that on September 6, 1996, Baylor knew, or should have known, about its injury. Baylor's summary judgment evidence raised no genuine issue of material fact regarding limitations. Accordingly, we resolve Baylor's three related issues against it.

We affirm the trial court's judgment.