

NUMBER 13-08-00449-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DBMS INVESTMENTS, L.P.,        Appellant,

v.

EXXONMOBIL CORPORATION F/K/A
HUMBLE OIL AND REFINING COMPANY,     Appellee.

On appeal from the 105th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela**
**Memorandum Opinion by Justice Garza**

   This dispute pertains to allegations of underground water and sub-surface soil contamination by appellee, ExxonMobil Corporation f/k/a Humble Oil and Refining Company ("ExxonMobil"), the prior operator of a gas plant. By two issues, appellant, DBMS Investments, L.P. ("DBMS"), appeals the trial court's granting of ExxonMobil's

traditional motion for summary judgment and plea to the jurisdiction.[1]  We affirm.

## I. BACKGROUND

The property in question is the Colonia del Rey RV Park (the "Park") located in Flour Bluff, Texas.  The Park is adjacent to a tract of land where ExxonMobil and its predecessor, Humble Oil and Refining Company, once operated a gas plant.[2]  On June 20, 1972, the property where the Park is now situated was conveyed to Raymond Sims. Raymond and his wife, Robbie Faye Sims, conveyed the property to their son, Ernest Sims, on April 18, 1990.  Ernest conveyed the property to DBMS on December 27, 2002. DBMS has owned the property continuously since Ernest's conveyance.  On November 28, 2005, Raymond and Robbie Faye executed a written assignment of their rights to any causes of action involving the property to Ernest, and Ernest, on the same day, executed a similar written assignment to DBMS.[3]

After learning that the underground water and sub-surface soil had been contaminated, Ernest filed his original petition on January 23, 2006, against Pittencrieff

---

[1] In its notice of appeal, DBMS named Ernest Sims as a party to this appeal; however, the record reflects that DBMS nonsuited Ernest.

[2] It is undisputed that ExxonMobil ceased to operate the gas plant on October 1, 1990.

[3] Raymond and Robbie Faye's written assignment specifically provided that:

NOW, THEREFORE, RAYMOND N. SIMS and ROBBIE FAYE SIMS hereby assign and transfer unto ERNEST SIMS, his heirs, representatives and assigns, all rights, causes and claims that RAYMOND N. SIMS and ROBBIE FAYE SIMS, or either of them, may have had as of the date of said Deed [April 18, 1990] against any third party for damages to the said Property and its appurtenances, including but not limited to any claims against any third party for the presence of, or by reason of the presence of, hazardous substance and/or solid waste in, on or under the Property, the presence of which was the result of action or inaction by a third party, or the presence of which was caused, generated, released, disposed of or produced by a third party.

The written assignment from Ernest to DBMS contained virtually the same language as Raymond and Robbie Faye's assignment to Ernest.

America, Inc. ("Pittencrieff"), a subsequent owner and operator of the gas plant. On February 20, 2006, Ernest and DBMS jointly filed a first amended original petition adding ExxonMobil and others that are not parties to this appeal. In their first amended petition, Ernest and DBMS asserted causes of action for negligence, trespass, nuisance, and breach of contract against Pittencrieff,[4] and gross negligence and malice against ExxonMobil relating to the contamination of the Sims Tract by petroleum hydrocarbons and other toxic materials and wastes.

ExxonMobil filed its original answer to Ernest and DBMS's first amended petition on March 27, 2006, generally denying the claims made by Ernest and DBMS and asserting numerous affirmative defenses, including statute of limitations and standing. ExxonMobil also noted that "Plaintiffs failed to exercise due diligence necessary to invoke the discovery rule as an exception to the statute of limitations. Plaintiffs['] damages claim, if any, was not inherently undiscoverable to Plaintiffs."

On November 1, 2007, the trial court signed a docket control order setting a December 30, 2007 deadline for "Amendment of Pleadings and Claims for Damages." *See* TEX. R. CIV. P. 166. Despite the trial court's docket control order, Ernest and DBMS filed their second amended petition on April 18, 2008, asserting negligence, trespass, nuisance, and gross negligence and malice actions against ExxonMobil. Ernest and DBMS also pleaded, for the first time, that the discovery rule tolled the applicable statute of limitations.[5] Specifically, Ernest and DBMS argued that:

---

[4] Pittencrieff was later nonsuited.

[5] It is undisputed that a two-year statute of limitations period applies in this matter. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon Supp. 2008).

> Plaintiffs did not discover, and in the exercise of reasonable diligence could not have discovered, the condition of the property, the wrongful acts of Defendant, and the resultant injury until less than two years prior to the filing of this lawsuit. Further, the injury is of a continuous nature.

ExxonMobil filed a motion to strike Ernest and DBMS's second amended petition, arguing that Ernest and DBMS violated the trial court's docket control order and failed to secure leave of the trial court to file an untimely second amended petition. In response to ExxonMobil's motion to strike, Ernest and DBMS filed a motion for leave to file their amended pleading. The record does not reflect that the trial court ruled on ExxonMobil's motion to strike or granted Ernest and DBMS's motion for leave.

On April 9, 2008, ExxonMobil filed a plea to the jurisdiction, asserting that Ernest and DBMS did not have standing to sue. Specifically, ExxonMobil argued that: (1) the November 28, 2005 assignment from Raymond and Robbie Faye to Ernest was ineffective because it was an attempt to assign Raymond and Robbie Faye's rights to a cause of action that had expired more than thirteen years ago; and (2) the November 28, 2005 assignment from Ernest to DBMS was ineffective because the underlying cause of action had expired and, therefore, Ernest did not have a cause of action to assign. ExxonMobil also argued that Ernest lacked standing because he was not the owner of the property at the time the lawsuit was filed.

On April 18, 2008, Ernest and DBMS filed a response to ExxonMobil's plea to the jurisdiction. In their response, Ernest and DBMS argued that: (1) a fact issue existed as to whether the limitations period had run; (2) Ernest and DBMS had standing because Raymond and Robbie Faye's rights to the causes of action pertaining to the property had been properly assigned to Ernest and, in turn, DBMS; and (3) it was improper for

4

ExxonMobil to raise its limitations defense in its plea to the jurisdiction. Moreover, Ernest and DBMS noted in their response that the contamination occurred between 1973 and October 1, 1990, and that the contamination was inherently undiscoverable to the owners of the property.

The trial court conducted a hearing on ExxonMobil's plea to the jurisdiction on April 23, 2008. At the hearing, counsel for Ernest and DBMS argued that their causes of action were kept alive by the discovery rule. Counsel for ExxonMobil objected, contending that Ernest and DBMS failed to properly plead the discovery rule. After hearing arguments from both parties, the trial court took the matter under advisement.

Later, Ernest and DBMS filed a no-evidence motion for summary judgment, alleging that ExxonMobil had not provided any evidence to support, among other things, its affirmative defense of "failure to ' . . . exercise due diligence necessary to invoke the discovery rule . . . .'" ExxonMobil filed a traditional motion for summary judgment on May 8, 2008. In its traditional motion for summary judgment, ExxonMobil stated that as a matter of law, Ernest and DBMS filed their lawsuit after the statute of limitations had expired. Ernest and DBMS filed a response to ExxonMobil's traditional motion for summary judgment on June 17, 2008.[6] Among other things, Ernest and DBMS asserted that the discovery rule applied in this case and served to toll the limitations period.[7]

On May 9, 2008, the trial court signed an order setting all pending motions for a

---

[6] On the same day, ExxonMobil filed a supplemental opposition to Ernest and DBMS's no-evidence motion for summary judgment.

[7] ExxonMobil later filed objections to Ernest and DBMS's summary judgment evidence and specifically objected to Ernest and DBMS's arguments pertaining to the discovery rule. ExxonMobil once again contended that Ernest and DBMS failed to properly plead the discovery rule and, therefore, the issue was not properly before the trial court.

5

hearing on June 24, 2008. At the hearing, Ernest and DBMS withdrew their no-evidence motion for summary judgment and notified the trial court of their intent to nonsuit Ernest.[8] *See* TEX. R. CIV. P. 162. After hearing arguments from both parties, the trial court orally granted ExxonMobil's traditional motion for summary judgment and plea to the jurisdiction. In its written order granting ExxonMobil's plea to the jurisdiction, the trial court noted that "THE COURT FINDS Plaintiffs, Ernest Sims and DBMS Investments, L.P. lack standing to assert claims for injury to real property against Defendant ExxonMobil Corporation. Therefore, this COURT lacks Subject[-]Matter Jurisdiction." In its written order granting ExxonMobil's traditional motion for summary judgment, the trial court noted that "[a]fter consideration of the pleadings of the parties, the motion, response, evidence on file and the arguments of counsel, the Court FINDS that the Motion for Summary Judgment on the Issue of Limitations is meritorious and should be GRANTED. . . . This judgment is FINAL, disposes of all claims and parties, and is appealable." This appeal ensued.

## II. ANALYSIS

### A. ExxonMobil's Motion for Summary Judgment

By its first issue, DBMS argues that the trial court erred in granting ExxonMobil's traditional motion for summary judgment on limitations. Specifically, DBMS contends that the discovery rule was properly before the trial court and that fact issues exist as to the

---

[8] Ernest and DBMS orally announced their intent to nonsuit Ernest from the case. *See* TEX. R. CIV. P. 162; *Greenberg v. Brookshire*, 640 S.W.2d 870, 872 (Tex. 1992) (orig. proceeding) (per curiam); *Strawder v. Thomas*, 846 S.W.2d 51, 59 (Tex. App.–Corpus Christi 1992, no pet.) ("The case law . . . clearly reflects that taking of a nonsuit does not necessitate the filing of any other pleadings or observing other technical rules, but merely requires the appearance before the court or clerk by a plaintiff, or intervenor, through its representative or attorney, and the transmittal to the clerk of the party abandoning its claims. No particular procedure is required to take a nonsuit."). The nonsuit is effective the moment it is announced. *See Greenberg*, 640 S.W.2d at 871. Thus, Ernest is not a proper party to this appeal. As such, we reference DBMS only.

6

application of the discovery rule. Thus, ExxonMobil was not entitled to summary judgment. ExxonMobil counters by arguing that DBMS failed to plead the discovery rule and that even if the discovery rule was properly plead, the statute of limitations had run as to all the claims asserted.

### 1. Standard of Review

The standards for reviewing summary judgment are well established. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Under a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). After the movant produces evidence sufficient to show it is entitled to summary judgment, the nonmovant must then present evidence raising a fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

### 2. Injuries to Land

Texas courts have held that "[w]here injury to land results . . . the right of action for all the damages resulting from the injury accrues to the owner of the land *at the time the thing that causes the injury commences to effect the land.*" *Vann v. Bowie Sewerage Co.*, 127 Tex. 97, 90 S.W.2d 561, 562 (1936) (addressing injury arising from a nuisance) (emphasis added); *see Senn v. Texaco, Inc.*, 55 S.W.3d 222, 225 (Tex. App.–Eastland 2001, pet. denied). "The right to sue for the injury is a personal right that belongs to the person who owns the property at the time of the injury." *Exxon Corp. v. Pluff*, 94 S.W.3d 22, 27 (Tex. App.–Tyler 2002, pet. denied); *see Senn*, 55 S.W.3d at 225-26; *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 686 (Tex. Civ. App.–Austin 1980, writ ref'd n.r.e.) ("A cause of

action for injury to real property accrues when the injury is committed."); *City of Dallas v. Winans*, 262 S.W.2d 256, 259 (Tex. Civ. App.–Dallas 1953, no writ); *Williams v. State*, 177 S.W.2d 106, 109 (Tex. Civ. App.–Waco 1943, writ ref'd).

However, Texas courts have crafted the following exception to this rule:

A subsequent purchaser cannot recover for an injury committed before his purchase absent an express provision in the deed, or as here an assignment, granting him that power. *To recover on an assigned cause of action, the party claiming the assigned right must prove a cause of action existed that was capable of assignment and the cause was in fact assigned to the party seeking recovery.*

*Ceramic Tile Int'l, Inc. v. Balusek*, 137 S.W.3d 722, 724 (Tex. App.–San Antonio 2004, no pet.) (citations omitted) (emphasis added). In other words, a purchaser of real property cannot recover for injury to the property committed before his purchase unless an express provision in the deed or an assignment grants the subsequent property owner that power. *Id.*; *see Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, No. 05-0729, 2009 Tex. App. LEXIS 114, at \*\*15-16 (Tex. Mar. 27, 2009). This is because the right to sue for injuries to real property is a personal right that does not run with the land. *Pluff*, 94 S.W.3d at 27; *Senn*, 55 S.W.3d at 225-26; *Abbott v. City of Princeton*, 721 S.W.2d 872, 875 (Tex. App.–Dallas 1986, writ ref'd n.r.e.), *overruled in part on other grounds by Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 281-82 (Tex. 2004).

In the instant case, it is undisputed that: (1) DBMS was not the owner of the Park at the time the alleged injury to the property first occurred; and (2) the alleged injury to the property last occurred on October 1, 1990. DBMS did not obtain ownership of the Park until December 27, 2002. Therefore, DBMS did not have legal claim to Raymond and Robbie Faye's potential causes of action pertaining to the Park until those causes of action

8

were assigned on November 28, 2005. *See Pluff*, 94 S.W.3d at 27; *Abbott*, 721 S.W.2d at 875. DBMS attempts to use the November 28, 2005 assignment it received from Ernest to support its contention that the it has the right to bring suit for the alleged contamination to the land.

### 3. Whether the Discovery Rule Was Properly Pleaded

In analyzing this issue, we must first determine whether DBMS properly pleaded the discovery rule. Rule 63 of the rules of civil procedure requires leave of court to amend a pleading after a court-prescribed deadline. *See* TEX. R. CIV. P. 63, 166; *see also Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988). However, rule 63 is to be liberally construed. *See Lee v. Key W. Towers, Inc.*, 783 S.W.2d 586, 588 (Tex. 1989); *Diesel Fuel Injection Serv. v. Gabourel*, 893 S.W.2d 610, 611 (Tex. App.–Corpus Christi 1994, no writ). Texas appellate courts apply a liberal interpretation in determining whether a trial court granted leave to file an amended pleading beyond the prescribed deadline. *See Johnson v. Rollen*, 818 S.W.2d 180, 183 (Tex. App.–Houston [1st Dist.] 1991, no writ) (finding that the trial court granted leave to file a late pleading where the pleading was filed after the deadline imposed by a docket control order).

*Goswami* directs us to presume that the trial court granted leave to file a late pleading even if the filer did not ask for leave when: (1) the record fails to show that the trial court did not consider the amended pleading; and (2) no surprise or prejudice is shown. *Lee*, 783 S.W.2d at 588; *Goswami*, 751 S.W.2d at 490; *see Wilson v. Korthauer*, 21 S.W.3d 573, 578 (Tex. App.–Houston [14th Dist.] 2000, pet. denied).

DBMS first pleaded the discovery rule in its second amended petition filed on April 18, 2008. This pleading was filed approximately four months after the December 30, 2007

9

deadline for filing amended pleadings imposed by the trial court's docket control order. In response to DBMS's second amended petition, ExxonMobil filed a motion to strike the pleading. DBMS subsequently filed a motion for leave with the trial court. The trial court did not rule on either ExxonMobil's motion to strike or DBMS's motion for leave. At the June 24, 2008 hearing, DBMS presented the trial court with its arguments pertaining to the discovery rule. ExxonMobil re-asserted its motion to strike at the hearing, but the trial court, once again, did not rule on the motion. Instead, the trial court, after hearing DBMS's arguments pertaining to the discovery rule and considering all pleadings on file, granted ExxonMobil's motion for summary judgment on limitations. Upon reviewing the record, we conclude that the trial court considered DBMS's discovery rule arguments and that ExxonMobil did not demonstrate surprise or prejudice. *See Wilson*, 21 S.W.3d at 578 (concluding that the resisting party did not prove surprise or prejudice because he did not secure a ruling on his motion to strike). As such, we presume that the trial court granted DBMS leave to file its second amended petition addressing the discovery rule.[9] *See Lee*, 783 S.W.2d at 588; *Goswami*, 751 S.W.2d at 490. Therefore, we must examine the summary judgment evidence to determine, as a matter of law, if the discovery rule tolled the applicable limitations period.

---

[9] On appeal, ExxonMobil also argues that the language used by DBMS in its second amended petition did not fairly raise the discovery rule. In Texas, the general rule is that pleadings will be construed as favorably as possible to the pleader. *See Gonzalez v. City of Harlingen*, 814 S.W.2d 109, 112 (Tex. App.–Corpus Christi 1991, writ denied). "The court will look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action has not been specifically alleged. Every fact will be supplied that can be reasonably inferred from what is specifically stated." *Pitman v. Lightfoot*, 937 S.W.2d 496, 511 (Tex. App.–San Antonio 1996, writ denied) (quoting *Gulf, Colorado & Santa Fe Ry. Co. v. Bliss*, 368 S.W.2d 594, 599 (Tex. 1963)). We note that ExxonMobil did not file any special exceptions raising this argument in the trial court. *See* TEX. R. CIV. P. 90. ExxonMobil's motion to strike merely alleged that DBMS neither timely filed its second amended petition nor secured leave of court to file the untimely amended petition. We therefore conclude that ExxonMobil has waived this argument. *See* TEX. R. CIV. P. 90; TEX. R. APP. P. 33.1.

10

### 4. The Discovery Rule

Accrual of limitations is a question of law for the court.  *See Knott*, 128 S.W.3d at 221.  Generally, a cause of action accrues and limitations begin to run when facts exist that authorize a claimant to seek judicial relief.  *See Schneider Nat'l Carriers, Inc.*, 147 S.W.3d at 279.  In determining when a cause of action begins to accrue, the supreme court has stated the following:

> Accrual of a cause of action is deferred in two types of cases.  In one type, those involving allegations of fraud or fraudulent concealment, accrual is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run.  The other type, in which the discovery rule applies, comprises those cases in which "the nature of the injury incurred is inherently undiscoverable and the evidence is objectively verifiable."

*S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).

In rare cases where the nature of the injury is inherently undiscoverable and evidence of the injury is objectively verifiable, courts have recognized the discovery rule as an exception to the general accrual rule.  *See, e.g., Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).  The discovery rule is a very limited exception to limitations and is construed strictly.  *See id.*; *S.V.*, 933 S.W.2d at 25 (noting that applications of discovery rule "should be few and narrowly drawn").  The rule has been limited to matters that are properly characterized as inherently undiscoverable.  *Johnson v. Abbey*, 737 S.W.2d 68, 69-70 (Tex. App.–Houston [14th Dist.] 1987, no writ).  An injury is inherently undiscoverable if, by its very nature, it is unlikely to be discovered within the prescribed limitations period despite the exercise of due diligence.  *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734-35 (Tex. 2001); *see S.V.*, 933 S.W.2d at 7 (stating that a party need not prove that the injury was impossible to discover, but only that it was

11

difficult to learn of the injury).  Whether an injury is inherently undiscoverable is determined on a categorical basis, because such an approach "brings predictability and consistency to the jurisprudence."  *See Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001).  Thus, the focus is on whether a type of injury, rather than a particular injury, was discoverable.  *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006).

When the discovery rule applies, a cause of action accrues when the plaintiff knows, or through the exercise of reasonable care and diligence should have discovered, the nature of his injury and the likelihood that it was caused by the wrongful acts of another.  *See Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998).  Thus, accrual is not delayed until the plaintiff learns of actual causes and possible cures for his injuries.  *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004).  Instead, a plaintiff who invokes the discovery rule must have sought information about his injuries and their likely cause once apprised of facts that would prompt a reasonably diligent person to make an inquiry that would lead to discovery of the cause of action.  *Pirtle v. Kahn*, 177 S.W.3d 567, 571 (Tex. App.–Houston [1st Dist.] 2005, pet. denied).

If, as here, the plaintiff pleads the discovery rule as an exception to limitations, the defendant moving for summary judgment must negate it.  *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).  This may be done by demonstrating that the discovery rule does not apply or by proving, as a matter of law, that there is no genuine issue of material fact as to when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of his injury.  *Childs*, 974 S.W.2d at 44.

**5. The State of the Evidence**

In response to ExxonMobil's traditional motion for summary judgment on limitations, DBMS attached the affidavit and report of J. Jay Klein, an environmental consultant, and affidavit of Ernest, among other things. In his affidavit, Klein stated that:

> Based on my investigation in this case, I can also state based on a reasonable degree of engineering probability that the contamination that is presently on the Colonia del Rey RV Park, which is the property that is the subject of the above-captioned and styled case, emanated onto that property from the adjoining property previously owned and operated by Defendant ExxonMobil approximately beginning in 1985 but no later than October 1, 1990[,] and was caused by Defendant ExxonMobil in that time period.
>
> Based on my investigation in this case, I can further state based on a reasonable degree of engineering probability that the contamination under the Colonia del Rey RV Park, which is the property that is the subject of the above-captioned and styled case, that emanated onto that property from the adjoining property previously owned and operated by Defendant ExxonMobil is inherently undiscoverable, meaning that, regardless of when the contamination occurred:
>
> a. There is no indicia of contamination on the subject property that can be detected by a visual inspection of the surface of the subject property;
>
> b. The nature of the contamination on the subject property, which is subsurface soil and groundwater contamination, cannot be detected by a visual inspection of the surface of the subject property;
>
> c. There are no public records that would have or could have put the owners of the subject property on notice, constructive or actual, that the subject property was contaminated; and
>
> d. Absent someone with actual knowledge of the contamination informing the owner of the property that the subject property is contaminated, the subsurface soil and water contamination is not discoverable through the exercise of reasonable diligence.

DBMS also included a copy of Klein's environmental liability assessment report, remedial

action plan, and remediation cost estimate. In his report, Klein relied on several aerial

photographs of the land surrounding the Park. In a letter, dated September 29, 2006, Klein

noted the following with respect to the aerial photographs:

> Historical aerial photographs indicate that waste disposal pits were formerly located on the Gas Plant adjacent to the northwestern property boundary [of the Park]. The photographs also indicate some storage tanks to the northeast in relation to the subject property. In addition, the historical aerial photographs indicate that a large petroleum storage tank was located west across Waldron Road in relation to the Colonia Del Rey RV Park.

> . . . .

> An aerial photograph from January 18, 1985 shows that the waste disposal pits/surface impoundment were closed by that time; however, the Defendants have apparently failed to take prudent action to determine the degree and extent of soil and groundwater contamination caused by these pits.

> In addition to the pits, aerial photos from 1989 through 2000 show that three (3) aboveground storage tanks were present on the Gas Plant property approximately 200-feet northeast of the subject property boundary (see attached aerial photograph dated April 30, 1989). Based on the interpreted groundwater flow direction shown on Figure 7, these tanks appear to be located hydraulically upgradient of the contaminated northeast corner of the subject property. The tanks, which appear to have been used to store petroleum hydrocarbons, represent a second potential source of hydrocarbons that could have leaked onto the adjacent Gas Plant property and migrated onto the Colonia Del Rey tract contaminating onsite soils and groundwater.

In addition, Klein's report included a site location map, which demonstrated that, in addition

to the above mentioned landmarks, the Park was surrounded by numerous oil wells.

In his affidavit, Ernest stated that he is the managing partner of DBMS, which owns

the Park, and that for the two years preceding the filing of the initial lawsuit, he had "no

knowledge of any contamination on, at, or under the Colonia del Rey RV Park." Ernest

also averred that the Park was operated by his father for seventeen years preceding

14

Ernest's acquisition of the Park in 1990, and that during that time, no one advised him of any potential contamination "on, at, or under the property." DBMS did not submit evidence indicating Raymond and Robbie Faye's knowledge or lack thereof of the alleged contamination.

In its opposition to DBMS's no-evidence motion for summary judgment, ExxonMobil attached numerous exhibits to its response and referenced previously filed pleadings in arguing, among other things, that DMBS's discovery rule contention should fail.[10]  In interrogatories sent by ExxonMobil, Ernest and DBMS admitted that at the time the property was conveyed, they had knowledge that the Park abutted the gas plant previously operated by ExxonMobil and that gas pipelines ran underneath the Park.  In addition, a real estate appraisal report prepared by Tasador, Inc. on March 5, 2002, prior to DBMS's acquisition of the Park, noted the following: "The concentration of long term industrial use properties and their accompanying environmental hazards are the primary detrimental influence in the neighborhood."  The appraisal report further noted that:

### **Potentially Detrimental Conditions**

---

[10] On appeal, DBMS argues that the evidence referenced by ExxonMobil in its original opposition and supplemental opposition to DBMS's no-evidence motion for summary judgment is not part of the summary judgment record.  We disagree.  Ordinarily, a reviewing court's scope of review is limited to the summary judgment record.  *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 787 (Tex. App.–Houston [1st Dist.] 2004, no pet.); *see Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).  The evidence referenced by ExxonMobil was filed in response to DBMS's no-evidence motion for summary judgment which was filed after ExxonMobil filed its traditional motion for summary judgment on limitations.  However, the record does not contain an objection filed by DBMS complaining about ExxonMobil's inclusion of this evidence in the summary judgment record; DBMS raises this argument for the first time on appeal.  *See* TEX. R. APP. P. 33.1(a)(1) (providing that to preserve error, a party must make a timely complaint to the trial court); *In re Estate of Schiwetz*, 102 S.W.3d 355, 360 (Tex. App.–Corpus Christi 2003, pet. denied) (holding that the failure to obtain written rulings on objections to summary judgment evidence waives the issue, unless the record reflects an implicit ruling by the trial court); *see also Nevins v. Whitley*, No. 13-04-486-CV, 2005 Tex. App. LEXIS 6942, at *21 (Tex. App.–Corpus Christi Aug. 25, 2005, no pet.) (mem. op.) (holding that several affidavits were properly part of the summary judgment record because the record did not contain a ruling, written order, or other indication that the trial court had implicitly or explicitly sustained objections to the summary judgment evidence).

. . . .

> **Hazardous Materials & Waste:** A "Phase I" Environmental Site Assessment (ESA) is necessary to identify obvious environmental impairment. The subject, being an industrial property, could be suspect to contamination from prior unknown uses. Consequently, an environmental impact study is recommended. Because this procedure is beyond the scope of this report and the appraiser's expertise, the site is assumed to be free of all potentially detrimental hazardous waste and materials. The appraiser recommends that a site assessment be performed to determine if in fact any contamination exists. The value conclusion for this tract is based upon the premise that no contamination exists, and the appraisers reserve the right to adjust the value conclusion should a professional examination of the site reveal contamination.

ExxonMobil also included several letters and reports indicating several remediation efforts involving the land surrounding the Park. The following is a brief summary of the letters included:

- A July 1, 1999 letter from the Texas Railroad Commission authorizing Pittencrieff to dispose of recovered groundwater from a former tank battery used in remediation efforts.

- A March 22, 2000 letter from the Texas Railroad Commission to Texas Crude Energy acknowledging an incident reported on October 5, 1999, and notifying Texas Crude Energy that it had not timely filed a Leak Report Form with the Texas Department of Transportation.

- An April 4, 2000 incident report involving a leak caused by a corroded gas pipeline operated by Texas Crude Energy.

- An October 25, 2000 letter from Pittencrieff to the Texas Railroad Commission addressing a modification of the remediation plan.

- An April 5, 2001 letter from Pittencrieff to the Texas Railroad Commission regarding a proposed plan to remediate the former tank battery referenced in the above mentioned July 1, 1999 letter.

Based on this information that was publicly available, ExxonMobil alleged that DBMS had not been diligent in discovering the alleged contamination.

ExxonMobil also provided documentation of several incidents of spills that had previously occurred in and around the Park. The following is a summary of ExxonMobil's evidence:

- March 22, 1993: a broken pipeline operated by Headington caused a crude oil spill in the area.

- September 14, 1994: two barrels of crude oil leaked into a drainage ditch and eventually ran into the Laguna Madre. Pittencrieff filed the incident report and took responsibility for the spill.

- March 13, 1995: a ten-gallon diesel-fuel spill occurred in the area. Pittencrieff filed the incident report and took responsibility for the spill.

- December 1, 2001: three gallons of condensate spilled into a drainage ditch in the area. Texas Crude Energy filed the incident report and took responsibility for the spill.

- March 26, 2005: two gallons of condensate spilled in the area. Texas Crude Energy filed the incident report and took responsibility for the spill.

ExxonMobil also included an affidavit from the custodian of records at the Texas General Land Office demonstrating that the above mentioned incident reports were business records of the Texas General Land Office. In addition, several of the reports included stamps indicating that the reports were also filed at either the Texas Commission on Environmental Quality or the Texas Railroad Commission.

**5. Constructive Notice and the Discovery Rule**

Most of the evidence presented by ExxonMobil undermined Klein's conclusions that the contamination was inherently undiscoverable. For instance, Klein alleged that information about the alleged contamination was not available to the public; however, publicly available records at the Texas Railroad Commission, Texas Commission on Environmental Quality, and the Texas General Land Office indicated that several oil and

17

gas spills had occurred on the land surrounding the Park. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 887 & n.1 (Tex. 1998) (stating that "filings and other materials publicly available from the Railroad Commission are a ready source of information, and a cause of action for failure to provide that same information is not inherently undiscoverable," but disagreeing that "that *all* Railroad Commission records are constructive notice . . . simply because they are a matter of public record") (emphasis added).

In conducting his investigation, Klein used aerial photographs of the land surrounding the Park. These photographs dated back to 1979 and demonstrated that the Park abutted the gas plant, several waste pits, and several storage tanks, many of which were the subject of the incident reports filed with the Texas General Land Office.[11] The record also included the report of the appraisal conducted prior to DBMS's acquisition of the Park, which indicated that the appraiser suspected that the land underneath the Park

---

[11] Though not on all fours with the present case, the reasoning in *HECI Exploration Co. v. Neel* is instructive. 982 S.W.2d 881, 886 (Tex. 1998). In analyzing claims brought by royalty interest owners against the operator of an adjoining property for overproducing oil, i.e. drainage, the supreme court noted the following:

> As owners of an interest in the mineral estate, the Neels [royalty interest owners] had some obligation to exercise reasonable diligence in protecting their interests. *This includes exercising reasonable diligence in determining whether adjoining operators have inflicted damage. Royalty owners cannot be oblivious to the existence of other operators in the area of the existence of a common reservoir.* In some cases, wells visible on neighboring properties may put royalty owners on inquiry. In any event, a royalty owner should determine whether a common reservoir underlies its lease because it knows or should know that, when there are other wells drilled in a common reservoir, there is the potential for drainage or damage to the reservoir.

*Id.* (emphasis added). Essentially, the supreme court held that even if the Railroad Commission records were not available to the public, the Neels could not ignore the surrounding operations and that they had a duty to exercise reasonable diligence to protect their interests. *See id.* In the instant case, a visual survey of the surrounding land would have put DBMS on notice that ExxonMobil and its predecessors and successors in interest were conducting oil and gas operations on the land surrounding the Park. Like the Neels, DBMS could not ignore the surrounding operations nor the possibility that the operations would cause contamination to the land. As previously noted, DBMS admitted in interrogatories propounded by ExxonMobil that the Park abutted the gas plant and that numerous oil and gas pipelines ran underneath the Park land.

18

was contaminated and suggested that the land be tested. *See Baylor Health Care Sys. v. Maxtech Holdings, Inc.*, 111 S.W.3d 654, 658 (Tex. App.–Dallas 2003, pet. denied) (holding that a report stating the land to be acquired "may pose an environmental concern to the [used car lot]" put Baylor on notice to further investigate possible contamination to the land).

We find that a reasonably diligent property owner would have inquired about the operations of the abutting gas plant and investigated the records at the Texas General Land Office, Texas Railroad Commission, and Texas Commission on Environmental Quality prior to acquiring the property, especially considering aerial photographs dating back to 1979 indicated that the gas plant had several waste pits and storage tanks surrounding the Park land. *See Hicks v. Humble Oil & Ref. Co.*, 970 S.W.2d 90, 94 (Tex. App.–Houston [14th Dist.] 1998, no pet.) (concluding that disclosure of the presence of oil pits constituted actual notice to a landowner of a "dangerous condition"). We therefore conclude that the alleged contamination was not inherently undiscoverable and that had DBMS and its predecessors in interest been reasonably diligent in investigating the alleged contamination, it would have been able to file suit within the applicable statute of limitations. *See S.V.*, 933 S.W.2d at 7.

We do not believe that this lawsuit, which was filed more than fifteen years after ExxonMobil ceased operating the gas plant, was timely filed. We hold that the evidence establishes that the discovery rule did not serve to toll the applicable limitations period.[12]

---

[12] Our conclusion is further supported by the holding in *Senn v. Texaco, Inc.* 55 S.W.3d 222, 227 (Tex. App.–Eastland 2001, pet. denied). In *Senn*, the plaintiffs alleged that Texaco's oil and gas operations had caused permanent and temporary injury to their land by contaminating the aquifer underlying plaintiff's land. *Id.* at 224. In response to the plaintiff's attempt to assert the discovery rule, the Tyler Court of Appeals stated that:

Thus, the November 28, 2005 assignments conveyed causes of action that were time-barred. Accordingly, we conclude that the trial court did not err in granting ExxonMobil's traditional motion for summary judgment. *See KPMG Peat Marwick*, 988 S.W.2d at 748; *Childs*, 974 S.W.2d at 44. Accordingly, we overrule DBMS's first issue on appeal.

## III. CONCLUSION

Because we have concluded that the discovery rule did not serve to toll the applicable limitations period, we need not address DBMS's second issue on appeal regarding standing. *See* TEX. R. APP. P. 47.1. We affirm the judgment of the trial court.


DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 11th day of June, 2009.

---

[T]he question of limitations cannot arise unless the plaintiff has standing to come into court. . . . *The discovery rule cannot work to transfer the ownership of a cause of action from one person to another simply because the second person claims to have discovered the injury.* The rule stated in *Vann* and *Lay* is simple, straightforward, and easily applied. It lends certainty to transactions involving real property by producing clearly defined rights and liabilities. We see no reason to riddle it with an exception engrafted from an entirely unrelated area of law.

*Id.* at 225-26 (emphasis added). The plaintiffs in *Senn* neither had an express assignment of the previous landowner's causes of action pertaining to the land nor a warranty in the deed from the previous landowner about the condition of the land. *See id.* at 225, 227.

20