**AFFIRM; and Opinion Filed May 16, 2013.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

_____

### No. 05-11-01539-CV

_____

**COLLECTIVE ASSET PARTNERS, LLC, Appellant**

V.

**CHRISTOPHER LANCE MCDADE, INDIVIDUALLY AND D/B/A C.L. MCDADE AND CO., Appellees**

On Appeal from the 193rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-11-13031

### OPINION
Before Justices Francis, Lang, and Evans
Opinion by Justice Francis

Collective Asset Partners, LLC appeals the trial court's summary judgment in favor of Christopher Lance McDade, individually and d/b/a C. L. McDade and Company. In four issues, CAP claims the trial court erred by granting summary judgment on its negligent misrepresentation claim against McDade because McDade had a duty to CAP, McDade's disclaimers did not vitiate CAP's claim, CAP reasonably relied on McDade's representations and suffered damages, and CAP's claims are not barred by limitations. We affirm the trial court's judgment.

In late 2006 and early 2007, Ashley Patten and Ted Peters formed the asset management company, CAP. Patten, an attorney and licensed escrow officer, ran, managed, and operated an

office under the name Texas American Title Insurance Company. Patten worked in real estate since 1999 and had been a licensed real estate broker. Peters was a consultant who helped finance businesses and individuals using existing contracts on construction loans as collateral. By 2005, Peters's business was responsible for about five to ten million dollars in commercial loans. Peters envisioned CAP initially buying assets and, within two years, involving new investors such as hedge funds and pension funds, and eventually selling corporate bonds for further investments.

CAP learned about a 13.88-acre piece of property near downtown Fort Worth from architect Michael Ken Schaumburg. When Schaumburg bought the property in May 2007, McDade was hired by Nexbank to perform the appraisal, and he valued the property at $10,250,000. The executive summary at the beginning of the May 2007 appraisal states the property is located on the north side of the Trinity River and is in Zone AE of the flood plain. The Federal Emergency Management Agency defines Zone AE as an area "subject to inundation by the one-percent-annual-chance flood event" and requires the purchase of flood insurance.

Schaumburg told Peters and Patten he wanted to sell the property to free up cash for another project. He also told them the property appraised for $10,250,000 and showed Peters drawings of potential development projects for the property. Peters and Patten knew Schaumburg and had previously done business with him, primarily lending money to Schaumburg on a short-term basis. Schaumburg referred Peters and Patten to Legend Bank for financing.

After CAP approached Legend Bank for financing, Legend Bank hired McDade to appraise the property. McDade again appraised the property at $10,250,000 and sent the fifty-five-page appraisal to Legend Bank with an effective date of June 26, 2007. The executive

2

summary beginning on page 1 of the June 2007 appraisal states the property is located on the north side of the Trinity River and is located in a Zone AE flood zone. Under the section entitled "Property Identification," however, the summary states "Upon examination of area flood maps, it was estimated that no portion of the tract is within a designated flood hazard zone." Under "Descriptive Analysis," the appraisal states "Flood Plain: None; AE; FEMA Map 48439C 0290 H, dated August 2, 1995." The attached FEMA map shows the property in Zone AE, but the appraisal states no adjustments were made for flood zone hazard. Under the section entitled "Intended Use and Intended User," the appraisal provides:

> It is the appraisers' understanding that the intended use of this appraisal is to provide a valuation basis to be utilized in the decision-making process and loan documentation purposes specifically for Legend Bank, the intended user. Any other use or uses are not intended or authorized. The report has no other purpose and should not be relied upon by any other person or entity.

On June 27, 2007, Patten, acting on behalf of CAP, signed the loan documents to finance the purchase of the property with Legend Bank for approximately $5.2 million. In addition, Patten signed two documents addressing special flood hazards. The first document, entitled "NOTICE OF SPECIAL FLOOD HAZARDS AND AVAILABILITY OF FEDERAL DISASTER RELIEF ASSISTANCE," is dated June 26, 2007 and provides in pertinent part:

> We are giving you this notice to inform you that:
>
> The building or mobile home securing the loan for which you have applied is or will be located in an area with Special Flood Hazards.
>
> The area has been identified by the Director of the Federal Emergency Management Agency (FEMA) as a Special Flood Hazard area using FEMA's Flood Insurance Rate Map of the Flood Hazard Boundary Map for the following community: CITY OF FORT WORTH. This area has at least a one percent (1%) chance of a flood equal to or exceeding the base flood elevation (a 100-year flood) in any given year. During the life of a 30-year mortgage loan, the risk of a 100-year flood in a Special Flood Hazard area is 26 percent (26%).

3

The second document, entitled "DEPARTMENT OF HOMELAND SECURITY FEDERAL EMERGENCY MANAGEMENT AGENCY STANDARD FLOOD HAZARD DETERMINATION," states (1) the property is located in flood Zone AE, (2) federal flood insurance is available, and (3) flood insurance is required because the property is in a flood hazard area. The second page of the document repeats verbatim the information quoted above from the first document and is dated June 27, 2007.

In the spring of 2009, CAP requested a study be performed on the land. The study showed a large portion of the land was located in a 100-year flood plain and, consequently, could not be developed as CAP envisioned. When CAP was unable to pay on the note, Legend Bank prepared to foreclose on the property, in part, by ordering another appraisal. In August 2009, McDade appraised the property at $4,800,000. Two months later, Legend Bank foreclosed.

CAP sued Schaumburg, Legend Bank, McDade, and others alleging negligence, gross negligence, negligent misrepresentation, common law and statutory fraud, fraud in the inducement, and conspiracy. CAP later narrowed its claims against McDade to negligent misrepresentation. The trial court granted McDade's motion for traditional summary judgment and severed CAP's claims against McDade into a new cause number. This appeal followed.

In its fourth issue, CAP contends the trial court erred by granting summary judgment on the grounds that limitations had run. CAP argues that, although it did not file suit until September 8, 2010, limitations was tolled during that time because CAP did not discover the property was in a flood plain or the extent to which the land was unable to be developed until May 2009. In his motion for summary judgment and in his appellate brief, McDade asserts CAP knew or should have known about the existence of a floodplain as early as June 2007.

To succeed in a traditional motion for summary judgment, the movant must establish there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). In reviewing a summary judgment, we consider the evidence in the light most favorable to the nonmovant and resolve any doubt in its favor. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Where, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *W. Invs., Inc.*, 162 S.W.3d at 550.

The two-year statute of limitations applies to a negligent misrepresentation cause of action. *Baylor Health Care Sys. v. Maxtech Holdings, Inc.*, 111 S.W.3d 654, 656 (Tex. App.—Dallas 2003, pet. denied). "As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). The discovery rule operates to defer accrual of a claim until the plaintiff knew or, in the exercise of reasonable diligence, should have known of the wrongful act causing its injury. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929–30 (Tex. 2011). A summary judgment movant on limitations bears the burden to "conclusively prove when the cause of action accrued," and "negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury." *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If the movant does this, the nonmovant must adduce evidence raising a fact issue in avoidance of limitations. *Id.*

The discovery rule is "a very limited exception to statutes of limitations" and applies only when the plaintiff's injury is inherently undiscoverable and objectively verifiable. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Id*. at 734–35. "Inherently undiscoverable" does not mean that a particular plaintiff did not discover its particular injuries within the limitations period. *Id*. at 735. The issue is whether the injury is of a type that generally is discoverable in the exercise of reasonable diligence. *Id*. Knowledge of facts, conditions, or circumstances that would cause a reasonably prudent person to make an inquiry is equivalent to knowledge of the cause of action for limitation purposes. *Haidar v. Nortex Foundation Designs, Inc.*, 239 S.W.3d 924, 926–27 (Tex. App.—Dallas 2007, no pet.); *Zimmerhanzel v. Green*, 346 S.W.3d 721, 725 (Tex. App.—El Paso 2011, pet. denied).

The summary judgment evidence shows CAP had knowledge the property was in a flood zone at the time of closing. The property is located on the north side of the Trinity River. Although the text of the June 2007 appraisal stated the property was not located in a flood zone, the executive summary on page 1 of the appraisal notes the property is in Zone AE flood zone. The FEMA map attached to the appraisal shows the property is in Zone AE. The record also shows, and CAP concedes in its appellate brief, that Patten received a survey in May 2007 showing part of the property in the flood plain. Finally, Patten signed two separate documents at or near closing, both of which stated the property was in flood Zone AE and had "at least a one percent (1%) chance of a flood equal to or exceeding the base flood elevation (a 100-year flood) in any given year." Although Patten denied the flood disclosure documents gave him notice the property was in a flood plain because he got "a whole stack of documents" at closing, we

disagree. A party who signs a document is presumed to know its contents. *In re Lyon Fin. Serv., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962) (reaffirming the principle that parties to a contract have an obligation to protect themselves by reading what they sign).

The facts in this case are similar to those in *Zimmerhanzel v. Green*. The Zimmerhanzels bought a house and surrounding acreage near a creek. 346 S.W.3d at 724. Their lender obtained a standard flood hazard determination from Stormwater Research Group stating the house was not in a special flood hazard area. Johnnie Green, an appraiser, was hired to perform the appraisal, which stated the house was not in a special flood hazard area. *Id*. A survey completed in connection with the sale showed the house was not in a special flood hazard area. Nevertheless, the Zimmerhanzels received a disclosure notice from the sellers, indicating there had been previous flooding of the property and, at closing, the sellers assigned their FEMA flood insurance policy to the Zimmerhanzels. *Id*.

Three years later, the property flooded due to heavy rain. Shortly afterwards, Linda Zimmerhanzel visited the office of the local flood plain manager and discovered most of the property, including the house, was located in a special flood hazard area. The Zimmerhanzels sued Green and Stormwater Research Group for negligence, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act, alleging they would not have purchased the property if they had known it was in a special flood hazard area. *Id*. Green and Stormwater Research Group moved for summary judgment on various grounds, including that the Zimmerhanzels' claims were time barred. The trial court granted summary judgment in favor of Green and Stormwater Research Group. *Id*.

On appeal, the Zimmerhanzels argued that, although they purchased the house and property in 2004, their claims did not accrue until July 2007, when the property flooded and they learned that it was in a special flood hazard area. They argued they could not have known they were buying a house that would flood because they relied on Stormwater Research Group's flood hazard determination, Green's appraisal, and the survey, as well as the sellers' assurance that the property had only taken on one or two inches of water on one previous occasion. *Id*. at 725. The El Paso Court of Appeals disagreed, noting the Zimmerhanzels were "on notice" that their new home was subject to flooding at the time of closing because they knew the property was near a creek; they were advised both in writing and orally that the home had flooded previously; and the sellers assigned their flood insurance to the Zimmerhanzels. In addition, the information regarding the home's location in a special flood hazard area was publicly available. The court concluded these facts and circumstances would, as a matter of law, cause a reasonable person to inquire further and, therefore, amounted to knowledge of the cause of action for limitation purposes. The El Paso Court of Appeals affirmed the summary judgment on this ground.

Having reviewed the summary judgment record, we likewise conclude the claims accrued when CAP purchased the property. CAP received an appraisal, a FEMA map, and a survey showing that the property was in a flood zone, and Patten signed two documents addressing special flood hazards. Although the appraisal contained conflicting information, the facts and circumstances in this case would, as a matter of law, cause a reasonable person to inquire further and, therefore, amount to knowledge of the cause of action for limitation purposes. *See Zimmerhanzel*, 346 S.W.3d at 726. The trial court did not err by granting summary judgment in favor of McDade. We overrule CAP's fourth issue. In light of our disposition of this issue, we need not address CAP's remaining issues. TEX. R. APP. P. 47.1.

8

We affirm the trial court's judgment.



/Molly Francis/

MOLLY FRANCIS
JUSTICE



111539F.P05

9



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

COLLECTIVE ASSET PARTNERS LLC, Appellant

No. 05-11-01539-CV    V.

CHRISTOPHER LANCE MCDADE, INDIVIDUALLY AND D/B/A C.L. MCDADE AND CO., Appellees

On Appeal from the 193rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-11-13031.
Opinion delivered by Justice Francis, Justices Lang and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees CHRISTOPHER LANCE MCDADE, INDIVIDUALLY AND D/B/A C.L. MCDADE AND CO. recover their costs of this appeal from appellant COLLECTIVE ASSET PARTNERS LLC.

Judgment entered this 16th day of May, 2013.

/Molly Francis/

MOLLY FRANCIS
JUSTICE

10