**AFFIRM; and Opinion Filed April 11, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00040-CV

### COLLECTIVE ASSET PARTNERS LLC, Appellant
### V.
### MICHAEL KEN SCHAUMBURG AND SCHAUMBURG ARCHITECTS, P.C., Appellees

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-13199**

## OPINION

Before Justices O'Neill, Myers, and Brown
Opinion by Justice O'Neill

The trial court entered a traditional summary judgment against appellant Collective Asset Partners, LLC ("CAP"). In five issues, CAP argues the trial court erred because issues of material fact exist regarding its claims for (1) negligent misrepresentation, (2) negligence and professional negligence, (3) gross negligence, (4) common law fraud, and (5) statutory fraud. We affirm the trial court's judgment.

### Background

In 2007, CAP was a partnership consisting of Ashely Patten, a title fee attorney, and Ted Peters, an independent businessman. CAP functioned as an asset management company investing in commercial real estate, residential real estate, securities, and royalty income from mining, oil, and gas.

Peters and Patten had a past working relationship with appellee Michael Schaumburg, an architect. During a meeting in 2007, Schaumburg told Peters about 13.88 acres of land located in Tarrant County (the "Property") that had previously appraised for $10.25 million. Schaumburg indicated it was a distressed sale, and CAP would need to move quickly to purchase the Property. Schaumburg provided additional information to CAP, and the parties discussed entering into a joint venture agreement with one of Schaumburg's companies, Urban Contractors, Inc.

CAP later signed a purchase contract for the Property. CAP financed the purchase of the Property with a loan from Legends Bank. The bank received a copy of an appraisal from Christopher McDade dated May 14, 2007, which valued the Property at $10.25 million.[1] On June 27, 2007, CAP closed on a $5 million loan with the bank for the Property. Schaumburg made approximately $1 million from the deal. After paying on the note for a little over two years, CAP was unable to continue paying, and the bank foreclosed on the Property in 2009.

On September 8, 2012, CAP filed suit against several defendants, including Schaumburg individually and against Schaumburg Architects, P.C. for negligent misrepresentation, professional negligence, gross negligence, common law fraud, statutory fraud, and conspiracy.[2] CAP alleged in its second amended petition that the defendants failed to disclose that a large portion of the Property was located in a 100-year flood plain, and consequently, the Property was not worth "anywhere near the $10.2 million for which it had been originally appraised."

Schaumburg filed a traditional motion for summary judgment and argued CAP's claims failed as a matter of law because CAP knew the Property was located in a 100-year flood plain

---

[1] CAP filed suit against McDade for negligent misrepresentation, and McDade prevailed in the trial court on summary judgment. This court affirmed the summary judgment on statute of limitations grounds. *See Collective Asset Partners, LLC v. McDade*, 400 S.W.3d 213 (Tex. App.—Dallas 2013, no pet.).

[2] CAP has not challenged the trial court's order granting summary judgment on its conspiracy claim; therefore, we need not address it. TEX. R. APP. P. 47.1.

before purchase, and "the Property was and still is developable" despite being in a flood plain. The trial court granted summary judgment, and this appeal followed.

## Standard of Review

To succeed on a traditional motion for summary judgment, the movant must establish there are no genuine issues of material fact, and it is entitled to judgment as a matter of law. *W. Inv., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). In reviewing a summary judgment, we consider the evidence in the light most favorable to the nonmovant and resolve any doubt in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Once the defendant produces sufficient evidence to establish a right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Where, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *W. Inv., Inc.*, 162 S.W.3d at 550; *Collective Asset Partners, LLC v. McDade*, 400 S.W.3d 213, 216–17 (Tex. App.—Dallas 2013, no pet.).

## Negligent Misrepresentation

In its first issue, CAP argues the trial court erred by granting summary judgment on its negligent misrepresentation claim. To prevail on its claim, CAP must show (1) the representation or withholding of information was made by Schaumburg in the course of his business or in a transaction in which CAP had a pecuniary interest; (2) Schaumburg supplied "false information" for the guidance of others in his business; (3) he did not exercise reasonable

care or competence in obtaining or communicating the information; and (4) CAP suffered pecuniary loss by justifiably relying on the representation. *Bank of Tex., N.A. v. Glenny*, 405 S.W.3d 310, 313 (Tex. App.—Dallas 2013, no pet.); *see also McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999). CAP must also prove proximate causation. *Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 830 (Tex. App.—Dallas 2011, no pet.). The components of proximate cause are cause in fact and foreseeability. *Id*. The test for both components is whether the defendant's conduct was a substantial factor in bringing about the injury that would not otherwise have occurred. *Id*.

In its second amended petition, CAP alleged the following:

> Defendants failed to disclose to Plaintiff material facts about the real estate that it sold to Plaintiff. Specifically, Defendants failed to disclose the following material facts about the land it sold to Plaintiff: (1) that a large portion (approximately half) of the land was located in a 100 year flood plain and the property could not be developed in the manner in which it had been drawn up by Schaumburg; and (2) that the land was not worth anywhere near the $10.25 million for which it had been originally appraised.

Schaumburg moved for summary judgment and argued (1) no privity of contract between the parties to support a cause of action for negligent misrepresentation; (2) CAP was aware the property was in a flood plain when it purchased the Property; therefore, Schaumburg did not provide any "false information"; and (3) the flood plain issue could not be the proximate cause of the decrease in value because the Property "was and still is developable."

The summary judgment evidence establishes that CAP had knowledge that the Property was in the flood zone at the time of closing. The executive summary on page 1 of the appraisal notes that the Property is in "Flood Plain: Zone AE; FEMA Map 48439C0290 H, dated August 2, 1995." The FEMA map attached to the appraisal shows the Property is in Zone AE. The record also shows that Patten received a survey in May 2007 indicating the Property was in a flood plain. Moreover, Patten admitted during his deposition that he signed two documents at or

–4–

near closing, both of which indicated part of the Property was located in the 100-year flood plain. Although Patten disagreed that the documents put him on notice of the flood plain because "you get a whole stack of documents," a party who signs a document is presumed to know its contents. *In re Lyon Fin. Serv., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008) (orig. proceeding).

In its motion for summary judgment response, CAP conceded it received surveys showing the Property was in the 100-year flood plain but argued, "While these statements are factually true, they are misleading in the way they are argued." CAP then argued its claims against Schaumburg involved the failure to communicate specific impediments to building on the Property and in providing an appraisal to CAP containing false information. However, construing the pleadings liberally, as we must, the specific impediments were not alleged by CAP in the second amended petition, which Schaumburg moved for summary judgment. S*ee, e.g., Carpet Serv., Inc. v. George A. Fuller Co. of Tex., Inc.*, 802 S.W.2d 343, 345 (Tex. App.— Dallas 1990), *aff'd*, 823 S.W.2d 603 (Tex. 1992) (noting a party's pleadings must be liberally construed in favor of the pleader as to effectuate the rights of the pleader to the full relief). Rather, CAP's second amended petition alleged a failure to disclose the Property's location in a 100-year flood plain; however, the record indicates CAP knew this information before or at the time of closing on the Property.

Although CAP also alleged the Property could not be developed in the manner in which Schaumburg had drawn up because of the flood plain, again, this was a material fact that CAP was aware of before or at the time of closing. An engineering report dated January 22, 2007 indicated the development of the Property would require excavation of approximately 90,000 cubic yards of soil, extension of water and sewer lines, extension of a storm drain, and "coordination with the Corps of Engineers (COE) and the City of Fort Worth to insure no loss of storm water storage in the Trinity River basin." It further stated, "Initial review of the site, Flood

–5–

Insurance Rate Map and COE requirements indicates that the excavation and filling of the site to provide for the development as described above is allowable within existing criteria set out by the governing bodies." While CAP argues such measures would be "costly," the report indicated the Property could be developed. As such, the record indicates the Property could be developed despite the flood plain. Accordingly, the summary judgment evidence establishes that Schaumburg did not provide any "false information" regarding the Property's location in a 100-year flood plain to support a negligent misrepresentation cause of action.

We now consider CAP's allegation that Schaumburg provided false information about the $10.25 million appraised value of the land. CAP alleged in its second amended petition that Schaumburg provided comparables to McDade, the independent appraiser, which influenced the appraised value of the land, and "All parties knew that CAP would be relying on the appraisal by McDade to consummate the transaction."

The record shows the "intended user" of the McDade appraisal was the bank providing the loan for the Property purchase. McDade testified during a deposition the only other "intended user" of an appraisal would be an attorney or individual, if they ordered it. He specifically stated a borrower, such as CAP, is not an "intended user." In fact, he said he did "not typically" expect a buyer to see the results of his appraisal.

Moreover, CAP's allegation in its petition that Schaumburg "influenced the appraised value of the land" by providing comparables is without support. McDade admitted Schaumburg sent him comparables of sales data from the Fort Worth Central Appraisal District. McDade stated he was familiar with some of them, "and they appeared to be spot on accurate." However, "I don't think we used any in - - as a comparable." Thus, CAP has failed to show how Schaumburg providing comparables to McDade, for an independent appraisal, was a substantial factor inflating the appraisal price. To conclude that Schaumburg is somehow the proximate

cause of any alleged injury for an independent, professional appraisal he did not prepare (nor could he) is simply too tenuous. As such, CAP has failed to establish proximate cause to sustain its cause of action for negligent misrepresentation. Thus, under these facts such allegations will not support a negligent misrepresentation claim.

Because Schaumburg did not provide any false information regarding the existence of the Property in a 100-year flood plain and CAP's allegations against Schaumburg relating to the alleged inflated appraisal lack proximate cause, CAP's negligent misrepresentation claim fails as a matter of law. Thus, the trial court properly granted summary judgment on this cause of action. We overrule appellant's first issue.

## Negligence and Professional Negligence

In its second issue, CAP asserts the trial court erred by granting summary judgment on its negligence and professional negligence claims. To succeed on a negligence and professional negligence claim, a party must demonstrate (1) the professional owed a duty to the claimant; (2) the professional breached that duty; (3) such breach proximately caused injury to the claimant; and (4) compensable damages occurred. *Siddiqui v. Siddiqui*, No. 14-07-00235-CV, 2009 WL 508260, at *5 (Tex. App.—Houston [14th Dist.] Mar. 3, 2009, pet. denied) (mem. op.); *Rubio v. J.K. & Susie L. Wadley Research Inst. & Blood Bank*, No. 05-93-00225-CV, 1994 WL 73997, at *3 (Tex. App.—Dallas Mar. 9, 1994, writ denied).

Schaumburg argued in his motion for summary judgment that no professional services contract existed between the parties establishing any duty on his part; therefore, he did not breach a duty or proximately cause any damages. He relied on *Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586 (Tex. App.—Fort Worth 2008, pet. denied) to support his position. CAP responded that the contract for the purchase of the Property, along with a "Memorandum of Understanding," proves that the parties agreed to "a joint venture to develop

the Property." CAP further claimed *Dukes* is distinguishable and although not completely explained, CAP seems to argue because that case involved an oral contract. We are unpersuaded by CAP's arguments.

The Unimproved Property Contract between Schaumburg and CAP states, "This contract is contingent on the execution of a 50/50 J.V. between Collective Asset Partners and Urban Contractors, Inc. to develop or sell the property that is acceptable to buyer and seller within 5 days." The Memorandum of Understanding executed between the parties states, in part, the following:

> This is an understanding between Collective Asset Partners, LLC (CAP) composed of Ashely B. Patten and Ted S. Peters and Urban Contractors Inc. (UCI) Ken Schaumburg General partner.
>
> On beha[lf] of CAP and UCI will share in all proceeds 50/50 that exceed the amount of $5,200,000.00, after any and all cost derived from the sale or development, limited to property [known] as Northside Fort Worth Project, located on the Southwest Corner of Northside Dr., I-35 West, consisting of approximately 13.88 Acres as noted in the Unimproved Property Contract executed between the Hart Trust and Collective Asset Partners, LLC. Ownership interest of said property is to be divided 51% unto CAP and 49% UCI with CAP maintaining sole management decision on development, marketing, management, and/or sale of said property.

In reliance on *Dukes* and as expanded upon below, we agree with Schaumburg that the two agreements between the parties do not establish a professional services contract imposing any duty on Schaumburg.

In *Dukes*, the trial court granted summary judgment in favor of architects involved in the architectural assessment of the Fort Worth Water Gardens. The primary question for the appellate court was whether the architects owed a duty to the individuals who drowned. *Dukes*, 252 S.W.3d at 581. As the court noted, the threshold inquiry in a negligence case is duty. *Id*. The plaintiff must establish both the existence and violation of a duty owed to the plaintiff by the

defendant to establish liability in tort. *Id.* Whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question. *Id.*

Although appellants argued the architects owed a duty "because, as professionals, they were under the ethical obligation to report any unsafe or hazardous conditions that they observed during their review of the Water Gardens," the court concluded there is no binding Texas authority to support the proposition that a court must take into consideration professional codes of ethics when conducting a duty analysis. *Id.* at 594. Rather, a contract for professional services gives rise to the professional's duty to exercise the degree of care, skill, and competence that reasonably competent members of the profession would exercise under similar circumstances. *Id.* In contracting for personal services, the court concluded the "duty depends on the particular agreement entered into" between the parties. *Id.*

The court then analyzed the April 22, 1999 contractual agreement between Johnson/Ritchie, Johantgen, and the city to determine the scope of any duty owed to the decedents.[3] The court held that the contract did not require the architects to report or make safe any hazards detected; therefore, they owed no duty and summary judgment was appropriate. *Id.* at 595.[4]

With these principles in mind, we consider the language of the agreements between Schaumburg and CAP, as quoted above. The Unimproved Property Contract merely provides that the contract is contingent on the execution of a joint venture to "develop or sell the property" within five days. Nothing within this document discusses Schaumburg providing professional services. The same is true of the Memorandum of Understanding. The document is best

---

[3] CAP incorrectly argues in its brief that the parties entered into an oral contract; however, the oral contract was between Johnson/Ritchie and Johantgen. 252 S.W.3d at 593. A written contract existed between the architects and the city. *Id.* at 594.

[4] The contract stated it would provide "a review of existing conditions," including the "pavement, steps, and railings"; the "pools' surfaces, plumbing and lighting"; the "changes to the original Water Gardens for compliance with the ADA"; and development of "appropriate repair options and establishing of repair priorities." 252 S.W.3d at 595.

characterized as a profit-sharing agreement. It does not specify any type of professional services that Schaumburg is to provide. Even if we were to construe the use of the word "develop" and "development" of the Property as insinuating professional services, the contract still does not expand on the meaning of "develop" and "development" to create or impose a duty on Schaumburg. If any duty exists, the scope of the duty must be created by the contract. We refuse to expand and read into these two documents any legal duty.

We acknowledge that CAP attached to its second amended petition a Certificate of Merit, as required under Texas Civil Practice and Remedies Code section 150.002. TEX. CIV. PRAC. & REM. CODE ANN. § 150.002 (West 2011) (requiring the certificate in any action for damages arising out of the provision of professional services by a licensed professional). However, the attachment of the Certificate of Merit does not create a duty where none exists, and CAP has failed to provide any further argument for its relevance.

Because Schaumburg's duty depends on the contract entered into with CAP and the two documents do not involve professional services, we conclude that CAP's assertion that Schaumburg owed a duty, which he breached, is without merit. Having conclusively negated one essential element of CAP's negligence and professional negligence claims, Schaumburg was entitled to summary judgment. We overrule CAP's second issue.

### Gross Negligence

In its third issue, CAP argues the trial court erred by granting summary judgment on its gross negligence claim. A finding of ordinary negligence is a prerequisite to a finding of gross negligence. *Ogunbanjo v. Don McGill of W. Houston, Ltd.*, No. 01-13-00406-CV, 2014 WL 298037, at *4 (Tex. App.—Houston [1st Dist.] Jan. 28, 2014, no pet.) (mem. op.). Accordingly, we conclude the trial court properly granted summary judgment on CAP's gross negligence claim because summary judgment was proper on its predicate negligence claim. *Id*; s*ee also*

–10–

*Seaway Prod. Pipeline Co. v. Hanley*, 153 S.W.3d 643, 659 (Tex. App.—Fort Worth 2004, no pet.) (concluding it was unnecessary to address gross negligence claim when party failed to present evidence in support of negligence claim). CAP's third issue is overruled.

## Common Law Fraud

In its fourth issue, CAP contends the trial court erred by granting summary judgment on its common law fraud claim. To succeed on its claim, CAP needed to establish (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Fath v. CSFBN 1999-C1 Rockhaven Place Ltd. P'ship*, 303 S.W.3d 1, 5 (Tex. App.—Dallas 2009, pet. denied).

In its second amended petition, CAP relied on the same facts as alleged in support of its negligent misrepresentation claim to support its common law fraud claim—Schaumburg knew or recklessly disregarded facts and artificially inflated the cost of the Property, and he provided false or misleading information regarding the development of the land and its location in a 100-year flood plain. In his motion for summary judgment, Schaumburg alleged he did not make any false representations. Having previously concluded that Schaumburg did not provide any false information regarding the Property and any alleged false statements to McDade in regards to the appraisal could not be the proximate cause of any injuries, we likewise conclude, as thoroughly discussed above, that Schaumburg has conclusively negated the second element of CAP's common law fraud claim. CAP's fourth issue is overruled.[5]

---

[5] We acknowledge that CAP has listed numerous alleged false representations in its brief; however, they center mostly on Schaumburg's dealings with McDade, which we have concluded do not support CAP's claims. Moreover, those representations were not specifically a part of

## Statutory Fraud

In its fifth issue, CAP argues the trial court erred by granting summary judgment on its statutory fraud claim. The elements of statutory fraud are (1) a transaction involving real estate or stock; (2) the defendant made a false representation of a past or existing material fact or made a promise to do an act with the intention of not fulfilling it; (3) the false representation or promise was made for the purpose of inducing the claimant to enter into a contract; and (4) the plaintiff relied on the false representation or promise in entering into the contract. *Anderton v. Crawley*, 378 S.W.3d 38, 56–57 (Tex. App.—Dallas 2012, no pet.); *see* TEX. BUS. & COMM. CODE ANN. 27.01(a)(1) (West 2009).

In his motion for summary judgment, Schaumburg again argued he did not commit statutory fraud because "it was neither unfair nor deceptive when [he] characterized the Property as developable, because the statement was true." As discussed in previous issues, we agree.

Moreover, we are not persuaded by CAP's arguments that a fact issue exists for statutory fraud under section 27.01(a)(2) involving "false promises." CAP argues Schaumburg never intended to develop the Property with CAP, and he later provided different drawings to another buyer that were "radically different" than those provided to it. CAP argues this raises a fact issue as to "false promises." Although CAP argues it alleged claims under both sections 27.01(a)(1) and 27.01(a)(2), a careful reading of its petition shows otherwise. Under the "Statutory Fraud" section of its second amended petition, CAP repeatedly references "false representations" allegedly made, but does not state any claim for "false promises." Thus, because CAP did not allege a violation of section 27.01(a)(2), we do not consider its arguments in support thereof.

---

paragraphs fourteen through nineteen in its second amended petition, which CAP incorporated to support its common law fraud claim. *Carpet Servs., Inc.*, 802 S.W.2d at 345.

Accordingly, because Schaumburg negated the essential element of making a "false representation" under section 27.01(a)(1), the trial court properly granted summary judgment. CAP's fifth issue is overruled.

## Conclusion

Having overruled appellant's issues, the judgment of the trial court is affirmed.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

130040F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

COLLECTIVE ASSET PARTNERS LLC,
Appellant

No. 05-13-00040-CV       V.

MICHAEL KEN SCHAUMBURG and
SCHAUMBURG ARCHITECTS, P.C.,
Appellees

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-13199.
Opinion delivered by Justice O'Neill.
Justices Myers and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee MICHAEL KEN SCHAUMBURG and SCHAUMBURG ARCHITECTS, P.C. recover their costs of this appeal from appellant COLLECTIVE ASSET PARTNERS LLC.

Judgment entered this 11th day of April, 2014.

/Michael J. O'Neill/

MICHAEL J. O'NEILL
JUSTICE

–14–