**AFFIRM; and Opinion Filed August 27, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00929-CV

**MATHESON TRI-GAS, INC., Appellant**

**V.**

**MAXIM INTEGRATED PRODUCTS, INC., Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-387**

## MAJORITY OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Lang-Miers

Appellant Matheson Tri-Gas, Inc. sued appellee Maxim Integrated Products, Inc. alleging

claims for breach of contract and fraud. Maxim counterclaimed seeking a declaratory judgment

that the parties' contract never commenced. The trial court granted summary judgment in favor

of Maxim. On appeal, Matheson argues that the trial court erred by granting summary judgment

in favor of Maxim. We affirm.

### BACKGROUND

This is the second case involving a nitrogen gas pipeline that runs from Matheson's

facility to a semi-conductor facility located in Irving, Texas (the Facility). The Facility was

previously owned by Atmel Corporation, and most of the events leading up to this second case

are explained in detail in our opinion in *Matheson Tri-Gas, Inc. v. Atmel Corp.*, 347 S.W.3d 339

(Tex. App.—Dallas 2011, no pet.) (*Atmel*). After Maxim bought the Facility and after our

decision in *Atmel*, Matheson sought payment from Maxim for amounts Matheson alleged were due and owing under the Nitrogen Purchase and Sale Agreement between Matheson and Maxim (the Agreement). Maxim took the position that the Agreement did not commence and refused to pay Matheson.

Matheson sued Maxim for breach of contract and fraud. In response, Maxim filed an answer generally denying Matheson's allegations and asserting various affirmative defenses. Maxim also asserted a counterclaim for declaratory judgment asking the trial court to declare that the Agreement never commenced because the parties never agreed on a commencement date as required under the terms of the Agreement. Maxim moved for summary judgment on Matheson's claims. Matheson moved for partial summary judgment on certain elements of its contract claim: breach and damages. Matheson also moved for summary judgment on Maxim's affirmative defenses and counterclaim for declaratory judgment. The trial court granted summary judgment in favor of Maxim, declared that "no enforceable agreement exists—only an unenforceable agreement to agree exists," and dismissed Matheson's claims. Matheson filed a motion for new trial, which the trial court denied after a hearing. Matheson timely filed its notice of appeal.

## ISSUES ON APPEAL

In its "Issues Presented," Matheson states that the central question in this appeal is whether the trial court erred by granting summary judgment in favor of Maxim. Matheson then breaks that question down into these five issues:

(1) Did the district court misconstrue the agreement and thereby err in granting Maxim's summary judgment motion, denying Matheson's summary judgment motions, and ruling that Matheson take nothing on its breach of contract claim?

(2) Should the court have granted Matheson a partial summary judgment on its breach of contract claim and denied Maxim any relief on its counterclaim?

(3)     Did the court err in denying Matheson's motion for summary judgment on Maxim's affirmative defenses?

(4)     Should the court have granted Matheson's motion regarding the proper measure of damages?

(5)     Did the court err in granting Maxim a summary judgment on Matheson's fraud claim as well?

**MATHESON'S CONTRACT CLAIM**

Matheson's first four issues on appeal relate to Matheson's contract claim. We address that claim first.

**Undisputed Facts**

The Agreement at issue in this case was signed by Matheson and Maxim in February 2007. At the time, Maxim was also negotiating for the purchase of the Facility from Atmel, and all three parties were negotiating the termination of Atmel's gas supply agreement with Matheson. At the heart of this dispute is section 3(a) of the Agreement, the provision titled "TERM AND TERMINATION." Section 3(a) states as follows:

> This Agreement shall be effective as of the date hereof. The sale and purchase of Nitrogen hereunder shall be for an initial term of fifteen (15) years ("Initial Term"), which term shall commence on or about March 15, 2007 or as otherwise agreed upon by the parties in writing. The commencement date shall be memorialized in writing between the parties and is incorporated herein by reference and made a part hereof.

The final sentence of the Agreement is also relevant. It states, "This whole agreement is conditioned on [Maxim]'s purchase of the [Facility]." The purchase closed, and Maxim acquired the Facility, on May 1, 2007. The parties did not enter into any other written agreements concerning the commencement date.

Each side argued that section 3(a) is unambiguous and should be construed in its favor. In its motion for summary judgment Maxim cited section 3(a) and argued that it did not breach the Agreement. More specifically, Maxim focused on the last sentence in section 3(a) and argued that its payment obligations never commenced because the parties never agreed to a

commencement date in writing. In response, Matheson argued that Maxim breached the Agreement as a matter of law. Focusing on the second sentence of section 3(a), Matheson argued that the contract commenced on March 15, 2007 because the parties never agreed on a different commencement date.

The trial court agreed with Maxim. In its final summary judgment order the trial court noted that the Agreement contains a condition precedent: "This whole agreement is conditioned on [Maxim]'s purchase of the [Facility]." It also noted that Maxim purchased the Facility on May 1, 2007. Based on those undisputed facts, the trial court explained that it granted summary judgment in favor of Maxim because the Agreement left open an essential term:

> The Court finds that the commencement date of the "term" was subject to the condition precedent of Maxim's purchase of the [Facility]. Maxim's agreement to purchase all of Maxim's present and future nitrogen requirements from Matheson could not have commenced prior to Maxim's purchase of the [Facility] on May 1, 2007. . . .

> The Court finds that Maxim and Matheson never agreed upon a commencement date of the "term" in writing and never memorialized an agreed date of commencement of the "term" of the "agreement" in writing between the parties.

> .   .   .

> The Court finds that Maxim and Matheson left such an essential and material term for later determination, which they never determined; therefore, no enforceable agreement exists—only an unenforceable agreement to agree exists.

**Standard of Review**

When both sides move for summary judgment, and the trial court grants one and denies the other, we consider the summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

**Analysis**

On appeal Matheson argues that the trial court's summary judgment dismissing its contract claim is erroneous for four reasons: (1) the trial court granted summary judgment "on a ground Maxim did not assert," (2) the trial court's ruling conflicts with our decision in *Atmel*, (3) the Agreement is unambiguous and should be construed in favor of Matheson, and (4) "[a]lternatively, a jury should decide the parties' intent."

### *Did the trial court grant summary judgment on a ground not asserted by Maxim?*

First, Matheson argues that the trial court's summary judgment in favor of Maxim on Matheson's contract claim was procedurally improper because it was granted "on a ground not asserted [by Maxim]—that the [Agreement] was an unenforceable agreement to agree." We disagree.

Maxim moved for traditional summary judgment on Matheson's contract claim on the ground that "Maxim has not breached the contract as a matter of law." Maxim argued that it did not breach the Agreement because "the parties never memorialized the commencement date in writing" and therefore "the contract never began." Although Maxim did not use the phrase "unenforceable agreement to agree," Maxim argued that the Agreement was missing an essential term—a commencement date. In its summary judgment order the trial court explained that Maxim was entitled to summary judgment because the Agreement was missing an essential term: "Maxim and Matheson left such an essential and material term for later determination, which they never determined; therefore, no enforceable agreement exists—only an unenforceable agreement to agree exists." We conclude that the trial court did not grant summary judgment on a ground not asserted by Maxim.

–5–

### *Does the trial court's ruling conflict with our decision in* Atmel*?*

Next, Matheson argues that summary judgment in favor of Maxim "contradicts this Court's ruling in *Atmel*." More specifically, Matheson quotes certain statements from our opinion in *Atmel* and argues that they are "binding in the present case." But Matheson does not cite to any relevant authority or invoke any applicable principle of law to support this argument.[1]

In *Atmel* we were not asked to, and did not, draw any conclusions about whether this Agreement, as written, was enforceable against Maxim or interpret the terms of this Agreement. Instead, in *Atmel* we were asked to construe the Termination Agreement among Atmel, Matheson, and Maxim—a different agreement with different terms. *See Atmel*, 347 S.W.3d at 342–45. Under the Termination Agreement, Atmel was released from its obligations to Matheson upon the occurrence of four conditions. The only condition in dispute was the fourth and final condition: "Maxim begins consuming product under the new [Matheson]/Maxim Nitrogen Pipeline Supply Agreement." *Id.* at 342. In that case Atmel presented summary-judgment evidence that Maxim consumed a small amount of nitrogen starting on the date it purchased the Facility.[2] *Id.* at 344–45. As a result, we concluded that the trial court did not err when it determined that the fourth condition had been satisfied and granted summary judgment in favor of Atmel. *Id.*[3]

Our decision in *Atmel* was based on the facts and arguments presented in that case. Maxim was not a party to that appeal, and we were not asked to decide whether Maxim had any viable defenses to the enforcement of any of its obligations under the Agreement. As a result, our decision in *Atmel* does not affect our review of the trial court's ruling in this case.

---

[1] *See* TEX. R. APP. P. 38.1(i) (argument must contain appropriate citations to applicable authorities).

[2] In *Atmel* the parties agreed that the closing of Maxim's purchase of the Facility occurred on May 7, 2007. In this case the parties agree that the closing occurred on May 1, 2007. This discrepancy is immaterial to our analysis.

[3] We note that we inadvertently referred to Matheson as Maxim in the second sentence of the second-to-last paragraph in *Atmel*.

### *Did the trial court misconstrue the Agreement?*

Next, Matheson argues that the trial court misconstrued the Agreement. Matheson argues that the Agreement is unambiguous and enforceable against Maxim because the "trigger date" was March 15, 2007, and the Agreement became enforceable starting on May 1, 2007—when the condition precedent (Maxim's purchase of the Facility) occurred. To support its argument, Matheson relies on *STS Gas Services., Inc. v. Seth*, No. 13-05-463-CV, 2008 WL 152229 (Tex. App.—Corpus Christi Jan. 17, 2008, no pet.) (mem. op.). In that case the court had to determine when a lease began. The lease stated that it commenced "on April 1, 1999, 'subject to the Landlord's substantial completion of certain build out work described below[.]'" *Id.* at *1. It was undisputed that the build-out work referenced in the lease was finished on September 1, 1999. On appeal the landlord argued that the lease began on April 1 and the tenant argued that the lease began on September 1. The court agreed with the tenant. It explained,

> [I]t is clear that the parties did not intend for the lease term to commence until after the build-out construction was completed on September 1, 1999. In harmonizing all lease provisions so as not to render any provisions meaningless, we conclude that the lease term did not commence until September 1, 1999.

*Id.* at *5.

Matheson essentially argues that *Seth* stands for the proposition that when a contract's commencement was subject to a condition precedent, and the condition precedent occurred, the contract commenced as of the date the condition precedent occurred. Matheson argues that "the same logic" applies in this case—i.e., the Agreement was subject to the closing, and the closing occurred on May 1, 2007, so the Agreement commenced on May 1. We disagree.

Unlike the lease in *Seth*, the Agreement references only a commencement date. It does not state that it commences on March 15 "or upon Maxim's purchase of the Facility." And section 3(a) requires that whatever the parties agreed to as the commencement date had to be "memorialized in writing," which indisputably did not occur. Additionally, the entire contract is

conditioned on Maxim's purchase of the Facility, and it is undisputed that Maxim did not own the facility as of March 15. As a result, March 15 could not have been the commencement date.

"Where an essential term is open for future negotiation, there is no binding contract." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). In this case it is undisputed that the start date was a material term. And because the parties left the commencement date open for future negotiations, there was no binding contract. *See id.*

### *Is the Agreement ambiguous?*

As a final alternative, Matheson argues that summary judgment was improper if the passage of time created a latent ambiguity as to the parties' intent and the meaning of section 3(a). More specifically, Matheson suggests that it may have been more appropriate for a jury to decide the question, "[W]hat did the parties intend if Maxim purchased the [F]acility after March 15, 2007, but never commenced operations?" We cannot agree. The passage of time did not affect the provision at issue in this case. The fact that the Agreement left open a material term does not render it ambiguous.

Having considered all of the evidence and arguments under the appropriate standard of review, we conclude that the trial court did not err when it granted summary judgment in favor of Maxim on Matheson's contract claim and denied Matheson's motions for partial summary judgment on the elements of breach and damages. As a result, we resolve Matheson's first, second, and fourth issues against it. And because we conclude that the trial court properly granted summary judgment in favor of Maxim on Matheson's contract claim, we do not need to address Matheson's third issue on appeal challenging the trial court's ruling on Maxim's affirmative defenses to Matheson's contract claim.

In its fifth and final issue Matheson challenges the summary judgment dismissing Matheson's fraud claim.

**Procedural Background**

Matheson's fraud claim against Maxim was pleaded as an alternative to its contract claim. Matheson alleged that if Maxim is correct that the Agreement never commenced because the parties did not agree on a commencement date, then Maxim committed fraud against Matheson because during negotiations Maxim never represented that the Agreement had no force or was merely an "options contract," and instead represented that the Agreement "had a definitive value based upon the anticipated income stream from the minimum payments." Matheson alleged that this representation caused Matheson to agree to reduce Atmel's termination fee by over $4 million.

In its motion for summary judgment on Matheson's fraud claim, Maxim argued that it was entitled to traditional summary judgment under rule 166a(c) for three reasons: (1) Maxim's statements are not actionable as fraud, (2) Maxim's statements were true when made, and (3) Matheson could not have justifiably relied on representations made by Maxim in the context of negotiating a commercial transaction between sophisticated parties. Maxim also argued that it was entitled to a no-evidence summary judgment under rule 166a(i) on the element of damages because "there is no evidence that Atmel and/or Maxim would have ever paid a higher termination charge than the $5.6 million ultimately paid to terminate that Atmel-[Matheson] gas supply contract" and there is no evidence that "Atmel would have continued to pay Matheson pursuant to the Atmel-Matheson gas supply contract for its remaining seven years, if that contract had not been terminated via the Termination Agreement." In response, Matheson argued that it could prove each element of its fraud claim and submitted its own supporting

evidence. The trial court granted Maxim's motion for summary judgment and dismissed Matheson's fraud claim without stating the basis for its ruling.

**Standard of Review**

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Once the defendant produces sufficient evidence to establish a right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Where, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *Collective Asset Partners LLC v. Schaumburg*, 432 S.W.3d 435, 438 (Tex. App—Dallas 2014, pet. filed). In reviewing a summary judgment, we consider the evidence in the light most favorable to the nonmovant and resolve any doubt in its favor. *Id.*

**Analysis**

We will address Maxim's first ground for summary judgment on Matheson's fraud claim because our conclusion as to that ground is dispositive of Matheson's fifth issue on appeal. In order to prevail on a claim for common law fraud, Matheson needed to establish that (1) Maxim made a material misrepresentation, (2) the representation was false, (3) Maxim knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth, (4) Maxim intended to induce Matheson to act upon the representation, (5) Matheson actually and justifiably relied upon the representation, and (6) Matheson suffered injury. *See id.* at 443.

As its first ground for traditional summary judgment under rule 166a(c), Maxim argued that Matheson could not plead or prove any representations by Maxim that are actionable as fraud. Maxim argued that it "only provided Matheson with its *opinion* of the gas contract's prospective value and never made any *factual* representations to Matheson."

In response to Maxim's motion Matheson relied on certain statements made in two emails and a deposition excerpt to support its fraud claim. On appeal Matheson cites and relies upon only two of the statements it relied upon in the trial court. First, it relies upon the following statement contained in an email from Maxim's agent to a Matheson employee dated March 20, 2007: "If this deal goes through, Maxim has agreed to purchase gas from Matheson for an additional 8 years beyond Atmel's term." And second, it relies upon the following statement contained in an email from a Maxim employee to a Matheson employee dated March 29, 2007: "we will/have signed a 15 year contract valued at net $18.8m for nitrogen pipeline gas."

Matheson argues that if we conclude that the trial court properly construed the Agreement, then these statements constitute actionable fraud. To support its argument that these statements are actionable, Matheson cites *Stokes v. Stokes*, 48 S.W.2d 724, 727 (Tex. Civ. App.—Eastland 1932, no writ), for the general proposition that "misrepresentations of value may, under certain circumstances, be treated as actionable misrepresentations of fact, as where such misrepresentations are coupled with concealment of material facts, or with artifice or misrepresentations used to prevent the hearer from learning the truth."

But the statements Matheson relies upon cannot, as a matter of law, form the basis of an actionable claim for common law fraud under Texas law. First, the statement that "Maxim has agreed to purchase gas from Matheson for an additional 8 years beyond Atmel's term" is a statement about the legal effect of a document the parties had already signed. "A representation as to the legal effect of a document is regarded as a statement of opinion rather than of fact and

–11–

will not ordinarily support an action for fraud." *Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 540 (Tex. 1987). There are certain recognized exceptions to this general rule, such as when the parties are not equally sophisticated business entities dealing at arms' length, or where there is a confidential or fiduciary relationship between the parties. *See id.* But Matheson does not argue that any recognized exception applies in this case.

Second, the statement that Maxim "will/have signed a 15 year contract valued at net $18.8m for nitrogen pipeline gas" does not amount to an affirmative misrepresentation that would support a fraud claim because Maxim had no special knowledge about the terms of the Agreement, and Matheson would be expected to have its own opinion about the terms of the Agreement and exercise its own judgment. *See Steptoe v. True*, 38 S.W.3d 213, 218 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (statement is not affirmative misrepresentation and cannot support fraud claim if it is merely opinion concerning matter about which other party "'may be expected to also have an opinion and to exercise his judgment'") (quoting *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 463 (Tex. App.—Dallas 1990), *writ denied*, 800 S.W.2d 853 (Tex. 1991) (per curiam)).

Both of the statements Matheson argues are actionable may reflect an implied presumption that the parties would later agree upon a commencement date as contemplated by the Agreement. But Matheson had equal access to the terms of the Agreement and was free to accept or reject this implied presumption.

Because the statements Matheson relies upon cannot, as a matter of law, support a claim for fraud, we conclude that Matheson did not satisfy its burden to raise a fact issue as to Maxim's first ground for summary judgment. *See, e.g.*, *Tsai v. Joseph J. Blake & Assocs., Inc.*, No. 05-00-00962-CV, 2002 WL 1792212, at *9 (Tex. App. Dallas—Aug. 6, 2002, no pet.) (mem. op., not designated for publication) (affirming summary judgment in favor of defendant on fraud

claim based upon opinion concerning value of certain property because plaintiffs had equal access to facts on which opinion was based). As a result, we conclude that the trial court properly granted summary judgment in favor of Maxim on Matheson's fraud claim.

## CONCLUSION

We resolve Matheson's first, second, fourth, and fifth issues against it. We do not need to address Matheson's third issue because our resolution of that issue would not change the disposition of this appeal. We affirm the trial court's summary judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Bridges, J., dissenting

130929F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MATHESON TRI-GAS, INC., Appellant

No. 05-13-00929-CV          V.

MAXIM INTEGRATED PRODUCTS,
INC., Appellee

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-387.
Opinion delivered by Justice Lang-Miers.
Justices Bridges and Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Maxim Integrated Products, Inc. recover its costs of this appeal from appellant Matheson Tri-Gas, Inc.

Judgment entered this 27th day of August, 2014.